1  DURIE TANGRI LLP
   DARALYN J. DURIE (SBN 169825)
2  ddurie@durietangri.com
   DAVID McGOWAN (SBN 154289)
3  dmcgowan@durietangri.com
   VERA RANIERI (SBN 271594)
4  vranieri@durietangri.com
   217 Leidesdorff Street
5  San Francisco, CA  94111
   Telephone:   415-362-6666
6  Facsimile:   415-236-6300

7  Attorneys for Defendant
   CITY OF HOPE

8

9                IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                       WESTERN DIVISION

12  ARMEN MARDIROS, *an individual*,        Case No. 2:19-cv-02196-R(MAAx)

13                          Plaintiff,      **JOINT SUBMISSION PURSUANT TO
                                            LOCAL RULE 37-2 REGARDING
14       v.                                 DEFENDANT'S PROPOSED
                                            PROTECTIVE ORDER**
15  CITY OF HOPE, *a California nonprofit*
16  *corporation*,                          Date:  October 3, 2019
                                            Time: 10:00 a.m.
17                          Defendant.      Ctrm: 690, 6th Floor
                                            Judge: Honorable Maria A. Audero
18
                                            Discovery Cutoff Date: 3/23/2020
19                                          Pretrial Conference Date: 4/13/2020
                                            Trial Date: 5/12/2020
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

DEFENDANTS' POSITION ............................................................... 1

PLAINTIFF'S POSITION .................................................................. 5

    I.    PLAINTIFF'S INTRODUCTORY STATEMENT ....................................... 5

    II.    BACKGROUND .................................................................. 6

        A.    Relevant Factual Background ................................. 6

        B.    Relevant Procedural History ................................. 7

    III.    ARGUMENT ..................................................................... 9

        A.    Legal Standard: City of Hope Must Make a Particularized Showing of Good Cause to Obtain An AEO Category in the Protective Order. ....................................................... 9

        B.    City of Hope's Request Is Untimely. .................................... 12

        C.    City of Hope Fails to Satisfy Its Burden for Obtaining a "Highly Confidential" Designation That Excludes Dr. Mardiros. ..... 13

        D.    AEO Treatment Would Materially and Unfairly Prejudice Plaintiff. 18

        E.    Dr. Mardiros Will Abide by the Current Protective Order. ............... 21

        F.    City of Hope's Proposed Protective Order Includes Unnecessary and Unwarranted Provisions. .............................................. 22

    IV.    CONCLUSION ................................................................. 24

# DEFENDANTS' POSITION

Pursuant to Section 12.1 of the Protective Order the Court entered on August 26, 2019, Dkt. No. 28, Defendant City of Hope ("COH") seeks to modify that order to include provisions allowing parties and non-parties to designate documents and information "Highly Confidential – Attorneys' Eyes Only" ("AEO"). The present motion is directed only to creation of an AEO level of protection, rather than to the classification of a particular document under that level.

Federal Rule of Civil Procedure 26(c) provides for entry of a protective order "for good cause," such as "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The Court has "*substantial latitude to fashion protective orders*" under this rule. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1212 (9th Cir. 2002) (emphasis in original); *see also* 8A Fed. Prac. and Proc. Civ § 2036 (3d ed. 2019) ("[A] court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule."). Under this authority, "[c]ourts commonly issue protective orders limiting access to sensitive information to counsel and their experts." *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Vesta Corset Co., Inc. v. Carmen Found., Inc.*, No. 97 CIV. 5139(WHP), 1999 WL 13257, AT *3 (S.D.N.Y. Jan. 13, 1999)); *see also Delquin Plastics USA, Inc. v. Larach*, CV 16-5518-TJN (AGRx), 2017 WL 6888280, at *2 (C.D. Cal. Sept. 26, 2017) ("Protective orders with attorneys eyes only provision are common in litigation between competitors in order to limit access to comparatively sensitive information to counsel and experts.").

Creation of an AEO level of confidentiality is appropriate for this case. COH does not seek a definitive ruling on any particular designation, but the nature of the material Plaintiff seeks to discover shows that creation of an AEO level is a prudent step to facilitate discovery. Plaintiff seeks the production of competitively sensitive information relating to COH's licenses to Mustang Bio. As Mustang's counsel stated on the parties' initial informal discovery conference call, Plaintiff works for a Mustang competitor.

Plaintiff seeks financial information that is not publicly available, and which has been redacted from Mustang's SEC filings. *See* Declaration of David McGowan ("McGowan Decl."), Exs. A–C; *Stout v. Remetronix, Inc.*, 298 F.R.D. 531, 534–36 (S.D. Ohio 2014) (ordering defendant's business information to be produced on AEO basis where some plaintiffs—current and former field technicians—were employed by competitors to defendants). Moreover, Plaintiff seeks personal financial information of both current and former COH employees. That information is disclosed in Appendices A and B to COH's Response to Interrogatory Four, which the Court examined in the parties' second informal discovery conference. Plaintiffs' document requests may adduce further such sensitive information, such as the substance of private negotiations between COH and Mustang.

Creation of an AEO category will not prejudice Plaintiff. Plaintiff states he is highly interested in and involved with the case, but Plaintiff's desire to see everything does not establish that an AEO level of protection is itself improper. Whether a particular document is properly treated as AEO is a separate question. Plaintiff proffers himself as a technical expert, but to date COH has not designated any technical information AEO. The designation has been applied only to licensing-related information and nonparty personal financial information. Plaintiff does not claim to have economic or licensing expertise, and he has identified nothing that he would be able to do with financial or licensing information that could not be done by his counsel. Beyond his own curiosity to learn, for example, how much money his former thesis adviser makes, Plaintiff has identified no reason he needs to see every document in the case. In contrast, the individuals whose financial information Plaintiff seeks have privacy interests that should be protected by limiting dissemination of their information as strictly as possible. *See Valley Bank of Nevada v. Super. Ct.*, 15 Cal. 3d 652, 656 (1975) ("[T]he right to privacy extends to one's confidential financial affairs as well as to the details of one's personal life.").

Finally, Plaintiff's conduct to date merits entry of an order. *First*, the record suggests that Plaintiff has in the past disregarded contractual obligations to COH pertaining to documents. In July, Plaintiff's counsel admitted that Plaintiff took COH

documents with him when Plaintiff left COH in 2014. McGowan Decl., Ex. D. Plaintiff apparently had this COH material in his possession when he worked for Kite Pharma and Allogene, two companies that compete in the same field as Mustang. Plaintiff asserted that COH knew he took this material, but upon repeated inquiry Plaintiff has never identified a COH official who gave him permission to do so.

COH asked for return of the documents and, when asked, confirmed that it would comply with its discovery obligations with respect to such documents. Plaintiff then proceeded to place a series of conditions on the return of COH's property. To date, Plaintiff still refuses to return COH's property. Instead Plaintiff's counsel served COH a document request for this information—which Plaintiff knew COH did not have—and then Plaintiff purported to produce this information to himself. McGowan Decl., Exs. E–H. For present purposes, COH's point is simply that Plaintiff's conduct belies his assertion that no AEO category is needed because COH should just trust him.[1]

*Second*, an order also is appropriate given Plaintiff's conduct under the parties' e-mail agreement with respect to AEO designation. The parties entered this email agreement after Judge Real's passing, pending reassignment to a new judge. *See* McGowan Decl., Ex. I. Based on this agreement, COH produced AEO material to Plaintiff. Since that time Plaintiff has taken the position that he may disregard the AEO designation unilaterally if he believes that COH has violated the parties' e-mail agreement as Plaintiff understands it. McGowan Decl., Exs. J–K. COH believes it has adhered to that agreement consistently, but, setting that particular dispute aside, an agreement between parties will not work where Plaintiff claims the unilateral right to abnegate the agreement. An order is appropriate to put an end to such conduct.

Creation of an AEO category should reduce the number of discovery disputes between the parties. By defining the appropriate standard for designating material AEO

---

[1] Thus far COH has refrained from bringing state court proceedings to secure the return of its property, as provided in *Pillsbury, Madison & Sutro v. Schectman* 55 Cal. App. 4th 1279, 1289 (1997). It is also possible that COH will raise Plaintiff's misuse of discovery processes with the Court, though COH hopes to resolve the dispute informally.

1   and identifying this Court's preferred process to resolving disputes regarding the propriety
2   of an AEO designation now, at the outset of the discovery process, the court will avoid the
3   need to adjudicate multiple disputes over those issues down the line.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOINT SUBMISSION PURSUANT TO LOCAL RULE 37-2 RE: DEF.'S PROPOSED
PROTECTIVE ORDER / CASE NO. 2:19-CV-02196-R(MAAX)

**PLAINTIFF'S POSITION**

**I.   PLAINTIFF'S INTRODUCTORY STATEMENT**

City of Hope has not and cannot meet its burden for obtaining an AEO provision. As demonstrated by the extensive case law cited below, a party seeking an AEO provision must show "good cause," which requires a timely and particularized evidence-based showing that specific prejudice or harm would result absent the proposed provision. Further, an AEO provision must be narrowly tailored to discrete categories of information.  Here, City of Hope does not even come close.  It presents conclusory attorney argument, but no evidence.  More importantly, City of Hope fails to substantiate any specific harm or prejudice.  As explained in the sworn declaration of Dr. Mardiros, he has no use for the discovery materials in this lawsuit, except for purposes of litigating his case.  There are no legitimate competitive concerns here.  On the contrary, Dr. Forman (who still heads the relevant lab at City of Hope) also sits on the scientific advisory board at Allogene Therapeutics, which is Dr. Mardiros' current employer.  Thus, it is unsurprising that City of Hope has not identified any specific document or category of documents that merits AEO treatment.  Nor has it established (much less through evidence) any harm or serious injury it or third party Mustang would suffer if the documents are designated as merely "confidential" or even "highly confidential."

On the other hand, an AEO designation would fundamentally and unfairly prejudice Dr. Mardiros.  He has been intimately involved in every aspect of this dispute—even before he retained counsel—and he has been designated as an expert.  Dr. Mardiros' reputation is beyond reproach, including among his former colleagues at City of Hope.  Other than the allegations that are fabricated by City of Hope's outside counsel, City of Hope personnel have never raised any concerns about Dr. Mardiros or his use of confidential information.  Likewise, City of Hope continues to cooperate with Dr. Mardiros.  Just this week, City of Hope invited Dr. Mardiros to come back as a visiting researcher, even while he continues his affiliation with Allogene.

Unfortunately, City of Hope's and Mustang's ***lawyers*** are trying to use a Protective

5

Order as an obstacle to prevent Dr. Mardiros from litigating this case.  City of Hope's motion is legally and factually unsubstantiated and should be denied.

## II.   BACKGROUND

### A.   Relevant Factual Background

Plaintiff Dr. Armen Mardiros co-invented and genetically engineered innovative brain and blood cancer therapies while working as a doctoral candidate researcher at City of Hope between 2009 and 2014.  (*E.g.*, Dkt. No. 1 ¶¶ 27, 44, 54; Dr. Mardiros Decl. ¶¶ 2-3).  As part of City of Hope's IP Policy, inventors are to receive "one-third" of any "money or stock received by the City of Hope for the transfer of intellectual property . . . as personal income to the staff member(s) who created the intellectual property.  (Dkt. No. 1 ¶ 22; Dr. Mardiros Decl. ¶ 5).  If a plurality of staff members are involved and a United States patent application is filed, each staff member named as an inventor on such application shall share equally in such monies."  (*Id.*).

City of Hope filed at least three patent applications relating to Dr. Mardiros' work.  (Dr. Mardiros Decl. ¶¶ 4, 6).  These applications covered technology relating to the IL13Rα2-targeting CAR, the CD123-targeting CAR and technology relating to the "spacer" or non-coding region of a CAR, respectively.  (*Id.* ¶ 6).  In March 2015, City of Hope entered into a lucrative, royalty-bearing license agreement covering these three patent applications with Mustang Bio, Inc.—a company that was specifically created to exploit the licensed technology.  (*See generally*, Dkt. No. 1, Ex. A).  Dr. Mardiros contributed to the technology claimed in each of these patent applications.  (Dr. Mardiros Decl. ¶¶ 4, 6).  However, City of Hope failed to name Dr. Mardiros on one of the applications, and incorrectly named another researcher, Mahesh Jonnalagadda, on two of the applications.  (*Id.* ¶ 10).  Despite extensive and compelling correspondence regarding the inventorship disputes and explicit remarks from the USPTO regarding Dr. Mardiros' contributions, City of Hope failed to correct inventorship on (and even failed to disclose the disputes as to) each of these three patent applications.  (Dr. Mardiros Decl. ¶¶ 10-11, 15, 18).  As a result, City of Hope short-changed Dr. Mardiros on the money and stock

received through the Mustang License.  City of Hope has already received tens of millions of dollars in cash and equity as a result of the Mustang License, and continued payments to City of Hope are imminent.

Further, as part of and simultaneous to its licensing deal with Mustang, City of Hope and Mustang entered into a "Sponsored Research" agreement, wherein Mustang would provide funding to City of Hope in the amount of $2 million per year.  (Dkt. 20 ¶ 369).  Although City of Hope contends that the Sponsored Research Agreement has nothing to do with Dr. Mardiros' inventions, such a claim is contrary to City of Hope's own documents indicating that the Sponsored Research Agreement was a key part of and condition to the Mustang License.  (*E.g.*, Dkt. 1-1 § 4.6).  Indeed, public records filed with the Securities & Exchange Commission confirm that "[t]he research covered under this arrangement is for IL13Rα2, CD123 and the Spacer technology"—the same three areas that Dr. Mardiros specifically contributed to and to which his inventions in the three patent applications relate.

Then, in 2017, years after Dr. Mardiros initially raised the inventorship disputes with City of Hope and less than a year after he retained counsel, City of Hope and Mustang restated the 2015 License Agreement to ultimately create three separate license agreements:  one covering the IL13Rα2 molecule, one covering the CD123 molecule and the third one covering the spacer technology.  (Def. Exs. A-C).  Since then, City of Hope has tried to use the "re-stated" license to re-allocate royalties.  Either way, inventorship and allocation of cash and stock from the Mustang License are inextricably intertwined.

Apart from the City of Hope lawyers running this case, Dr. Mardiros continues to maintain excellent relations with City of Hope and its personnel.

### B.    Relevant Procedural History

Dr. Mardiros has been negotiating with City of Hope regarding these disputed issues for over three years now.  For example, at least on May 26, 2016, June 24, 2016, July 29, 2016 and August 5, 2016, Dr. Mardiros wrote detailed letters and otherwise communicated with City of Hope explaining that inventorship on the patent applications

was incorrect.  (Dr. Mardiros Decl. ¶¶ 14-15, Exs. 1-4).  Over much of that time, Dr. Mardiros has also been seeking his portion of the stock, royalties and other moneys received under the Mustang deal.  (Dr. Mardiros Decl. ¶¶ 16, 18, Exs. 3, 5).  City of Hope repeatedly promised to turn over certain moneys and stock to Dr. Mardiros, and City of Hope repeatedly failed to live up to its promises.  (Dr. Mardiros Decl. ¶17).  On August 16, 2018, Dr. Mardiros sent City of Hope a draft Complaint.  (*Id.* ¶ 19, Ex. 6).  The parties attended a mediation before Judge Tevrezian on January 30, 2019.  City of Hope still refused to budge.

Accordingly, Plaintiff filed his complaint against City of Hope on March 22, 2019.  (Dkt. No. 1).  On May 23, 2019, the parties conducted their Rule 26(f) conference.  Dr. Mardiros participated in that conference, too.  That same date, Plaintiff served initial Requests for Production, Requests for Admission and Interrogatories on City of Hope.  (Ruttenberg Decl. ¶ 2).

On May 28, 2019, City of Hope proposed a Protective Order with a default AEO designation.  (*Id.* ¶ 3).  In attempting to understand the language used by City of Hope, counsel for Dr. Mardiros inquired as to the origin of the Protective Order suggested by City of Hope.  (*Id.* ¶ 4).  City of Hope refused to answer (and still refuses to answer).  (*Id.*).  City of Hope also refused to specify the types of documents requiring AEO treatment.  (*Id.*).  To move things forward, on June 20, 2019, Plaintiff's counsel sent back its own version without an AEO designation.  (*Id.* ¶ 5, Ex. 11).  Meanwhile, the June 24 deadline for responding to Plaintiff's discovery requests came and left, without a single document produced by City of Hope.  (*Id.* ¶ 6).

On June 28, 2019—after meeting and conferring extensively—the parties agreed to a protective order that does not include any default AEO designation, but "without prejudice to the ability of any Party to seek heightened protection (such as an Attorney's Eyes Only" designation) upon a proper showing on an individualized basis."  (*Id.* ¶¶ 7-9).  Because City of Hope was still not prepared to identify any particular material or categories of material that qualify for an AEO designation, the parties further agreed that

City of Hope could designate as AEO individual items temporarily in order to avoid holding up discovery, "and that Dr. Mardiros's counsel will respect that designation pending judicial resolution of any disagreement regarding that designation."  (Ruttenberg Decl. ¶ 8, Def. Ex. I).

After reaching an agreement, the parties learned of the passing of Judge Real. (Ruttenberg Decl. ¶ 9).  Because there was no judge available to sign their Stipulated Protective Order, the parties agreed to postpone submission of the Stipulated Order or any further disputes until a new judge was assigned.  (Ruttenberg Decl. ¶ 10).   Once Judge Audero was assigned to the discovery disputes in this case, the parties filed and the Court entered a stipulated Protective Order without an AEO designation, similar to the one agreed to on June 28, 2019.  (Dkt. No. 28).  (*Id.* ¶ 11).

On August 30, 2019, City of Hope submitted a request for informal discovery conference, seeking the Court's permission to designate ***only*** its response to Interrogatory 3 as "attorneys' eyes only."  (Dkt. No. 31-1).  Yet, during the September 10 discovery conference, the Court encouraged the parties to meet and confer on an amended two-tiered protective order.  After doing so, the parties reached an impasse.

City of Hope still refuses to identify any specific document that requires AEO treatment, even though counsel for Plaintiff specifically requested this information on several occasions.  Indeed, with the exception of generally referring to Mustang licenses and third party financial information, City of Hope has provided no information to Plaintiff as to why any documents warrant AEO treatment.  This Rule 37 joint stipulation follows.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>: City of Hope Must Make a Particularized Showing of Good Cause to Obtain An AEO Category in the Protective Order.

As a starting point, a party seeking entry of a protective order regarding confidentiality (or any other protective order) must show "good cause" under Fed. R. Civ. Prov. 26(c)(1)(G).  *Diemer v. Lowe's Home Improvement Warehouse, Inc.*, No.

9

SACV121255DOCRNBX, 2012 WL 12896371, at *1 (C.D. Cal. Nov. 6, 2012).  "Such
showing should be made separate from the parties' stipulation regarding the terms of the
proposed protective order." *Id.*  To establish good cause for a protective order under
Federal Rule of Civil Procedure 26(c), courts have insisted on a particular and specific
demonstration of fact, as distinguished from "stereotyped and conclusory statements."
*Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quotation omitted).  Further, the
producing party bears the burden, "for each particular document it seeks to protect, of
showing that specific prejudice or harm will result if no protective order is granted."
*Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

The burden is particularly high for obtaining an attorneys-eyes-only provision.
"Requiring an AEO provision is a drastic remedy given its impact on the party entitled to
the information, in that it prevents a party from reviewing documents with counsel, and
can hamper the ability of the party to present his or her case."  *McDonald Apiary, LLC v.
Starrh Bees, Inc.*, No. 8:14-CV-351, 2016 WL 868185, at *1 (D. Neb. Mar. 4, 2016)
(denying AEO provision).  "As the party seeking the AEO provision, [City of Hope]
bears the burden of establishing good cause for its inclusion in the protective order."
*Lindsey v. Elsevier Inc.*, No. 16CV00959GPCDHB, 2016 WL 8731471, at *2 (S.D. Cal.
Aug. 19, 2016) (denying AEO provision); *see also Martinez v. City of Ogden*, No.
1:08CV00087TCDN, 2009 WL 424785, at *3 (D. Utah Feb. 18, 2009) (denying AEO
provision, and observing "Request to keep information from Plaintiff implicates
Plaintiff's due process rights to have a full and fair opportunity to litigate").

Thus, a party seeking to add an AEO designation to a Protective Order must "show
that specific prejudice or harm will result" absent that proposed modification.  *Nat.-
Immunogenics Corp. v. Newport Trial Grp.*, No. SACV1502034JVSJCGX, 2017 WL
10562763, at *5 (C.D. Cal. Nov. 20, 2017) (declining to add AEO provision).  The
particularized showing must be based on evidence, not attorney argument.  *Robert Half
Int'l Inc. v. Ainsworth*, No. 14CV2481-WQH (DHB), 2015 WL 12699865, at *2 n.3
(S.D. Cal. May 15, 2015) (conclusory and self-serving "attorney argument, rather than

evidence" is "insufficient to satisfy [City of Hope's] burden."); *see also McDonald Apiary*, 2016 WL 868185, at *2 ("such a showing requires specific demonstrations of fact, supported where possible by affidavits and concrete examples").

Absent such a showing, an AEO designation should be denied. *Nat.-Immunogenics*, 2017 WL 10562763, at *5; *see also Int'l Bhd. of Teamsters v. Alaska Air Grp., Inc.*, No. C17-1327-MJP, 2017 WL 6034363, at *2 (W.D. Wash. Dec. 6, 2017) ("The Court finds Defendants have not demonstrated that an AEO designation is appropriate in this case."); *Lindsey*, 2016 WL 8731471, at *2 (denying AEO provision); *Robert Half*, No. 14CV2481- WQH (DHB), 2015 WL 12699865, at *2 (denying motion to add AEO provision to protective order for lack of good cause); *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007) (denying AEO provision and noting producing party has "the burden of proving the competitive harm that would befall them by virtue of" disclosure under the regular "confidential" designation); *Unico Am. Corp. v. Crusader Captive Services LLC*, No. 06-CV-231, 2006 WL 2355524, at *1 (N.D. Ill. Aug. 11, 2006) (rejecting AEO provisions).

If the producing party satisfies its "heavy burden," an opposing party may still oppose the protective order by showing the risk that such a protective order will impair prosecution or defense of the claims. *Lindsey*, 2016 WL 8731471, at *2. At that juncture, the court must balance the public and private interests to decide whether such a protective order is necessary. *Id.*

Further, even in a stipulated protective order, the category of protected AEO documents "must be narrowly tailored and cannot be overbroad." *Big Baboon, Inc. v. Dell Inc.*, No. CV 09-01198, 2009 WL 3735812, at *1 (C.D. Cal. Nov. 6, 2009) (rejecting stipulated Protective Order). The AEO category must be limited to "specific categories of material that are meaningfully described." *Id.* The AEO description in the Protective Order cannot encompass documents that are "not specifically identified in the order." *Id.* (rejecting AEO designation that includes "other non-public information of similar competitive and business sensitivity"). An AEO designation is a tier that should be used

sparingly. *DeFreitas v. Tillinghast*, No. 12-cv-00235, 2013 WL 209277, at *4 n.1 (W.D. Wash. Jan. 17, 2013) ("Because AEO designations can make litigation very onerous, the court expects both parties to use that designation sparingly and only where absolutely necessary").

A motion for an AEO provision must also be raised in a timely fashion. To be timely, "a protective order must be obtained **before** the date set for the discovery, and failure to move at that time will be held to preclude objection later." *United States v. Panhandle E. Corp.*, 118 F.R.D. 346, 350-51 (D. Del. 1988) (emphasis added) (finding untimely a motion for protective order raising arguments that could have been raised earlier but were raised after the time for responding to discovery requests). "The failure to timely move for a protective order constitutes grounds for denying the same." *Barten v. State Farm Mut. Auto. Ins. Co.*, No. CV-12-00399-TUC-CKJ, 2014 WL 348215, at *1 (D. Ariz. Jan. 31, 2014).

### B.    City of Hope's Request Is Untimely.

As an initial matter, City of Hope's motion is months too late. Plaintiff served City of Hope with its First Set of Requests for Production on May 23, 2019, and responses were due on June 24, 2019.[2] After meeting and conferring, the parties agreed months ago to a protective order that does not include a default AEO provision. (Ruttenberg Decl. ¶ 8). Once discovery matters were referred to Your Honor, the parties submitted their stipulated protective order (without any AEO designation), which the Court entered on August 26, 2019. (Dkt. Nos. 27, 28). In other words, City of Hope stipulated to—and the Court entered—a Protective Order that does not include an AEO category.

To be sure, the parties previously agreed that City of Hope could seek "heightened protection . . . upon a proper showing on an individual basis." (Ruttenberg Decl. ¶ 8). Thus, on August 30, 2019, pursuant to the parties' earlier agreement, City of Hope

---

[2] City of Hope failed to produce anything for months and has still failed to make any meaningful document production. *Cf. Grasshopper House, LLC v. Renaissance Recovery Servs., LLC*, No. CV 10-3198 DMG(JCX), 2011 WL 13214102, at *4 (C.D. Cal. Mar. 30, 2011) (absence of a protective order is **not** grounds for failing to produce documents).

1  requested an informal discovery conference for purposes of designating one Interrogatory

2  response as AEO.  (Dkt. No. 31-1).  Even then, City of Hope did not seek an amended

3  protective order with an AEO designation.  City of Hope's current request to amend the

4  Protective Order and seek a new two-tiered protective order (four months after Dr.

5  Mardiros served his discovery requests) is untimely.  *See Panhandle*, 118 F.R.D. at 350-

6  51 (motion to amend protective order untimely where arguments could have been raised

7  earlier); *Robert Half*, No. 14CV2481-WQH (DHB), 2015 WL 12699865, at *1 (denying

8  motion for modified protective order with AEO designation where party "could have

9  requested different language" earlier).  Defendant's motion should be denied on this basis

10  alone.  *Barten*, No. CV-12-00399-TUC-CKJ, 2014 WL 348215, at *1.

11        **C.**    **City of Hope Fails to Satisfy Its Burden for Obtaining a "Highly**

12                **Confidential" Designation That Excludes Dr. Mardiros.**

13        City of Hope has not made the requisite (or really, any) showing of good cause for

14  obtaining an AEO designation, much less modifying a pre-existing Order to obtain such a

15  designation, as required by the extensive case law described above.[3]  City of Hope does

16  not substantiate or even explain in its briefing that any "specific prejudice or harm will

17  result" absent the proposed AEO designation.[4]  In fact, City of Hope submits no

18  declarations or evidence at all, much less particular and specific demonstrations of fact.

19  *Gulf Oil*, 452 U.S. at 102 n.16.  City of Hope's motion should be denied.

20        Tellingly, City of Hope's proposed AEO language also does not specify any

21  particular categories for which it seeks an AEO designation.  For months now, Plaintiff

---

[3] *Nat.-Immunogenics Corp. v. Newport Trial Grp.*, No. SACV1502034JVSJCGX, 2017 WL 10562763, at *5 (C.D. Cal. Nov. 20, 2017) (declining to add AEO provision); *McDonald Apiary*, 2016 WL 868185, at *1; *Alaska Air*, 2017 WL 6034363, at *2; *Robert Half*, 2015 WL 12699865, at *2; *Martinez*, 2009 WL 424785, at *3; *Unico*, 2006 WL 2355524, at *1; *MGP Ingredients*, 245 F.R.Dat 501.

[4] *Nat.-Immunogenics*, 2017 WL 10562763, at *5; *see also Unico*, 2006 WL 2355524, at *1 (N.D. Ill. Aug. 11, 2006) ("The party seeking to protect documents bears the burden of showing good cause.  This typically involves a detailed discussion of the information sought to be protected, supported by valid reasons establishing good cause and legal citations."); *Deford v. Schmid Prods. Co.*, 120 F.R.D. 648, 653 (D. Md. 1987) (requiring "specific demonstrations of fact, supported where possible by affidavits and concrete examples, rather than broad, conclusory allegations of potential harm").

13

has invited City of Hope to propose specific categories of information that City of Hope believes require AEO treatment.  (Ruttenberg Decl. ¶¶ 3-4, 8, 12).  Plaintiff renewed that request last week, during the parties' Court-ordered meet-and-confer.  (*Id.* ¶ 12).  Plaintiff even sent over proposed edits, asking City of Hope to identify the specific categories of information.  (*Id.*).  But City of Hope refuses to so do, insisting that the AEO provision should generically encompass any "[i]nformation or Items whose disclosure to another Party or Non-Party would create a substantial risk of serious injury that could not be avoided by less restrictive means."  *(Id.)*.  Such generic language is not narrowly tailored, and it would be unacceptable even if the language were stipulated.  *Big Baboon*, 2009 WL 3735812, at *1 (rejecting proposed stipulated protective order that would authorize AEO designation for "other non-public information of similar competitive and business sensitivity").

Grasping at straws, City of Hope tries to justify its open-ended AEO provision by pointing out that Dr. Mardiros works for a company called Allogene Therapeutics, which City of Hope characterizes as a competitor—not of City of Hope itself—but of a third-party, namely Mustang Bio.  Even for that contention, City of Hope fails to provide any evidence.[5]  More importantly, City of Hope fails to explain how Dr. Mardiros' role at Allogene has anything to do with Mustang or any of the information that is likely to be produced in discovery.

In considering whether to grant a two-tiered protective order, courts often look to whether the parties are direct competitors and, if so, whether the excluded individual(s) are "competitive decisionmakers."  *MGP Ingredients*, 245 F.R.D. at 501.  Even if the information is highly confidential, a "competitive decisionmaker" can only be excluded from receiving the materials if he or she would be virtually unable to compartmentalize the information and not use it to seek to gain an unfair advantage.  *See, e.gIntervet, Inc. v.*

---

[5] Plaintiff cites the statement of "Mustang's counsel . . . on the parties' initial informal discovery conference call," which is not evidence.  *See Robert Half*, No. 14CV2481-WQH (DHB), 2015 WL 12699865, at *2 (attorney argument is not evidence that can support an AEO provision).

*Merial Ltd.*, 241 F.R.D. 55, 55-59 (D.D.C. 2007); *United States v. Dentsply, Int'l, Inc.*, 187 F.R.D. 152, 159-60 (D. Del. 1999) (noting the relevant consideration for disclosure is whether the person is involved in competitive decision-making such that they "would have a difficult time compartmentalizing his knowledge").

Here, there is no evidence that Dr. Mardiros' employer (much less the Plaintiff himself) directly competes with City of Hope or any producing party.  Further, Dr. Mardiros is ***not*** a competitive decision-maker at Allogene.  He has no role in licensing or negotiating strategy.  (Dr. Mardiros Decl. ¶¶ 46, 49).  He is not involved in board meetings, marketing or patent strategy, and does not provide input in these areas.  (*Id.* ¶ 49).  City of Hope has not identified any particular information that is likely to be produced in discovery that could afford Dr. Mardiros or his employer a competitive advantage.  Dr. Mardiros is a scientist, but there is no suggestion that his scientific work creates any competitive risk with respect to the documents or information City of Hope will produce.  On the contrary, City of Hope admits that it has ***not*** "designated any technical information AEO."  Dr. Mardiros has no use for the discovery requested in this case aside from litigating the case itself.  (*Id.* ¶ 49).  To the extent necessary, he also demonstrates his ability to compartmentalize the information (based on prior experience). (*Id.* ¶ 53).

City of Hope's (and Mustang's) purported "competitive" concerns are not only unsubstantiated, they are also disingenuous.  Outside of this motion, the relevant players readily share information and personnel without any confidentiality concerns.  For example, Dr. Stephen Forman—who heads the relevant Forman Lab and participates in patenting and licensing matters at City of Hope—sits on a scientific advisory board at Allogene Therapeutics (Dr. Mardiros' employer), and has attended meetings at Allogene's headquarters on multiple occasions.  (Dr. Mardiros Decl. ¶ 50).  Similarly, Dr. Mardiros still maintains an excellent relationship with City of Hope personnel.  (*Id.* ¶¶ 50-51).  Dr. Mardiros was even recently invited to return to City of Hope as a visiting researcher, despite his continued employment with Allogene.  (*Id.* ¶ 51).  Other than the

frivolous allegations leveled by the City of Hope's **outside counsel**, City of Hope itself has never accused Dr. Mardiros of any wrongdoing. (*Id.* ¶¶ 52, 67). City of Hope has not even presented evidence suggesting there is any confidentiality agreement in place that protects the information for which it seeks AEO treatment.[6]  The absence of any witness declarations or other evidence speaks volumes.

City of Hope also fails to meaningfully explain (much less with **evidence**) why the current Protective Order is insufficient to protect its interests.   For example, although City of Hope suggests that certain discovery could include licensing materials that were sealed in SEC filings and (supposedly) personal financial information, City of Hope does not present any meaningful explanation as to why the "confidential" designation is insufficient to address those concerns.  These are simply the inputs used for calculating royalties owed to Dr. Mardiros, which is the same type of information that was shared with him in the past.  (Dr. Mardiros Decl. ¶ 37).  None of it is commercially sensitive. City of Hope also cites no authority (or evidence) for designating as AEO the amount of stock and royalties allocated to the three other named inventors.  Further, both City of Hope and Mustang have previously produced much of the same discovery in another litigation using a one-tiered protective order (without any AEO provision).  Namely, in *Tang v. Rosenwald, et al.*, Case No. 2:16-cv-01317-MWF-PLA, Mr. Tang sued both entities for claims arising out of the negotiation and execution of the same 2015 Mustang license at issue here.  (*See* Dkt. No. 1-1; *Tang*, Dkt. No. 20).  None of this warrants an AEO provision.

The *Robert Half* case (among the many others cited above) is instructive.  In *Robert Half*, the court considered a party's motion to add an "attorneys' eyes only" designation to the stipulated protective order.  *Id.*  The producing party contended the documents at issue contained "confidential business information and trade secrets" and

---

[6] *See McDonald Apiary*, 2016 WL 868185, at *2 ("while the plaintiff contends that it keeps such information secret, there is little evidence that such information . . . was protected by actual confidentiality agreements").

qualified as "so proprietary or competitively sensitive that its disclosure to persons other than those permitted by the Protective Order could cause irreparable competitive or other injury . . . ." *Id.* at *1. The court denied the moving party's request because "aside from generally describing the content and sensitive nature of the documents," the party did not establish "that the documents need any level of protection beyond that which is afforded for "Confidential" documents under the Protective Order." *Id.* Similarly here, City of Hope does nothing more than contend—without evidence—that the documents it seeks to designate are "extremely sensitive," such that disclosure would pose a substantial risk of serious harm.

The cases cited by City of Hope do not support its position. For example, the *Nutratech* case explicitly holds a moving party seeking a Protective Order "must, under Rule 26(c), show good cause for its issuance. Specifically, the moving party must make a clear showing of a particular and specific need for the order." *Nutratech*, 242 F.R.D. at 554 (emphasis added). *Nutratech* also confirms that "a party asserting good cause bears the burden of showing that ***specific prejudice or harm*** will result from the disclosure of each document (or item of information) that it seeks to protect. *Id.* (emphasis added). The court in *Nutratech* ultimately granted a ***limited*** AEO provision, but only based upon evidence (including sworn declarations) from the moving party showing that (i) the parties are competitors who sell the same product, and (ii) defendant would suffer competitive harm through disclosing lists of "specific customers and suppliers" to plaintiff's president. *Nutratech*, 242 F.R.D. at 555. In contrast, City of Hope has not provided any sworn testimony, and the parties are not competitors. Dr. Mardiros is not the president at his current employer, and he has no input into competitive decision-making there. (Dr. Mardiros Decl. ¶¶ 46, 49). City of Hope has not identified any specific documents requiring AEO treatment, much less particular documents whose disclosure to Dr. Mardiros would cause competitive harm.

City of Hope's other cases fare no better. For example, the *Phillips* case recognizes the obligation on the moving party to show "specific harm" and confirms that

17

"broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Phillips*, 307 F.3d at 1210–11.  And the *Delquin* case (which does not involve any disputed AEO provision) holds that questioning whether one side will abide by the protective order is "purely speculative and unsupported by any showing."  *Delquin*, No. CV165518TJHAGRX, 2017 WL 6888280, at *2.

In short, City of Hope fails to cite a single case where the court entered an open-ended AEO designation that does not have a particularized list or category of documents. City of Hope also fails to cite any case granting a disputed AEO provision based on the moving party's attorney argument.  On the contrary, the cases City of Hope cite uniformly require concrete and particularized evidence substantiating a particularized risk of serious harm absent AEO treatment, as well as a narrowly tailored AEO provision.

Other courts have properly rejected two-tiered protective orders or an AEO provision where, like here, the moving party fails to establish good cause.  *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 501 (D. Kan. 2007) (rejecting two-tiered protective order for failure to show good cause); *Frees, Inc. v. McMillan*, No. 05-1979, 2007 WL 184889, *5 (W.D. La. Jan. 22, 2007) (rejecting two-tiered protective order despite direct competitor status because of the party's unique position to assist counsel to ascertain misappropriation of his own data); *Unico Am.*, No. 06-CV-231, 2006 WL 2355524, at *2 (N.D. Ill. Aug. 11, 2006) (striking "highly confidential" designation and associated protocol since "[i]t has been this Court's experience that two-tiered protective orders can be confusing and frequently invite nonproductive satellite litigation."). The Court should do so here.

### D.    AEO Treatment Would Materially and Unfairly Prejudice Plaintiff.

Dr. Mardiros would be unfairly and substantially prejudiced by an attorneys' eyes only designation that excludes him.  He is uniquely qualified to analyze discovery and provide input, both because of his scientific background and his years-long knowledge of the facts and industry.  (Mardiros Decl. ¶¶ 28-36).  Dr. Mardiros has been personally and actively involved in this dispute since its inception several years ago—even before

retaining counsel and filing suit.  (*E.g.*, *id.* ¶¶ 14, 29-30, 33).  He is actively involved in prosecuting this litigation, and even participated in mediation, settlement meetings and the parties' Rule 26 conference.  (*Id.* ¶¶ 14, 21, 28-36).  Dr. Mardiros has also been designated as an expert in this case.  (*Id.* ¶¶ 33, 43).   Indeed, his involvement is likely to conserve scarce resources. (*Id.* ¶ 43).  As other courts have confirmed, an AEO provision that excludes Dr. Mardiros has serious due process implications under these circumstances.  *McDonald Apiary*, 2016 WL 868185, at *2; *Martinez*, 2009 WL 424785, at *3.

Yet another court has explained the serious importance of a party's access to discovery for purposes of litigating the case:

> Discovery, trial preparation, and trial are made more difficult and expensive if an attorney cannot make complete disclosure of the facts to the litigant. Further, courts cannot ignore the fact that ninety-eight percent of cases are not tried, but are resolved in mediation and other settlement methods. It is difficult, and perhaps impossible, for an attorney to counsel a client to compromise or even abandon a case on the basis of information kept secret from the client. A litigant who is not in possession of all relevant facts, furthermore, is in a poor position to assess its obligation to evaluate its ongoing obligation to maintain only arguably meritorious actions at every stage of the case. Although the imposition of these and other handicaps upon a litigant is justifiable in some circumstances, such action by the court must be supported by a showing that disclosure will work a clearly defined and serious injury to the party seeking extraordinary confidential treatment.

*Arvco Container Corp. v. Weyerhaeuser Co.*, No. 1:08–cv548, 2009 WL 311125 (W.D. Mich. Feb. 9, 2009) (denying AEO provision); *see also Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *5 (N.D. Ill. June 1, 2010) ("The Court cannot put it much better than the court in [*Arvco*]").

Ignoring these fundamental principles, City of Hope contends that Dr. Mardiros' expertise is unrelated to the types of documents it seeks to designate as AEO, but that contention is unfounded.  First, City of Hope fails to specify the categories of documents that would be covered by the proposed AEO provision.  Moreover, even the types of

documents that City of Hope does reference in its motion raise serious prejudice concerns. (*See* Mardiros Decl. ¶¶ 27-28). City of Hope and Mustang have redacted the patent numbers that are licensed, the descriptions of milestones and all of the other technical information that Dr. Mardiros needs to analyze. (*Id.* ¶¶ 35-36). To be sure, Dr. Mardiros is not merely "curious" to see the documents—he is uniquely positioned to review and assess the documents. (*Id.* ¶ 34). It is **City of Hope's** burden to establish good cause for precluding Dr. Mardiros to access such documents—not the other way around. But even if it could articulate "good cause," Dr. Mardiros' needs outweigh those concerns.[7]

There is also no reason to believe that an AEO provision would preserve judicial resources or lead to "efficiency," as City of Hope contends. On the contrary, "two-tiered protective orders can be confusing and frequently invite nonproductive satellite litigation." *Unico Am.*, 2006 WL 2355524, at *2. This is particularly true here, where the proposed AEO provision is open-ended without any description of what is or is not appropriate for AEO treatment. An AEO provision could also be used to exclude Dr. Mardiros from providing much needed input at deposition, expert reports and motion practice. (Dr. Mardiros Decl. ¶¶ 38-40). Even if the Court later agrees that the AEO provision was incorrect, the damage could not be undone.

Indeed, City of Hope has already abused the designation in its discovery responses. For example, in responding to Plaintiff's Interrogatory No. 3, City of Hope redacted **every single word** of its response, aside from legal objections. But a significant portion of the information provided in the response is publicly available—and none of it rises to level of "extremely sensitive" information whose disclosure would create a substantial risk of serious harm. "This underscores that Defendant[] ha[s] not narrowly tailored [its] request." *City of Oakland v. SSA Terminals, LLC.*, No. C 11-1446 YGR MEJ, 2012 WL

---

[7] *See, e.g.*, *Lindsey*, 2016 WL 8731471, at *5 ("Given Plaintiff's extensive experience working in the field and with Defendant, and Plaintiff's claimed lack of extensive funds, the Court further finds Plaintiff would be prejudiced if he were not permitted to review Elsevier's information.").

1414075, at *3 (N.D. Cal. Apr. 23, 2012) (denying motion to limit access to documents due to failure to make required good cause showing).

City of Hope is merely using the designation as a tactic to prevent Dr. Mardiros a full and fair opportunity to litigate his case. (Dr. Mardiros Decl. ¶¶ 41-42). Such gamesmanship should not be tolerated.

### E.   Dr. Mardiros Will Abide by the Current Protective Order.

Dr. Mardiros has read and understands the provisions in the Protective Order, and he acknowledges his obligation to abide by its terms. (Dr. Mardiros Decl. ¶¶ 22-26). The risk of abuse of knowledge of confidential information is small, if any. *MGP Ingredients*, 245 F.R.D. at 502 (granting access where parties acknowledged they would be subject to the protective order). There is no basis to speculate that the individual Plaintiff would ignore his legal obligations under a Protective Order. *Delquin*, No. CV165518TJHAGRX, 2017 WL 6888280, at *2; *see also MGP Ingredients*, 245 F.R.D. at 502 (where persons agree to abide by terms of a protective order, the risk of abusing knowledge of confidential information is "small" and rejecting two-tiered order).

Further, the suggestion by City of Hope's **lawyers** that Dr. Mardiros "has in the past disregarded contractual obligations to COH pertaining to documents" is completely unfounded and fabricated. (*See* Dr. Mardiros Decl. ¶¶ 55-68). Dr. Mardiros has not violated any confidentiality obligation. The emphasis on "lawyers" is warranted because, apparently, City of Hope's internal personnel do not share this view of Dr. Mardiros, whose reputation is beyond reproach. (*Id.* ¶ 66-67). On the contrary, City of Hope continues to invite Dr. Mardiros to participate in its research—even today. (*Id.* ¶¶ 51, 67). In any event, none of this is relevant to the motion at hand. *Martinez*, 2009 WL 424785, at *3 (alleged "untrustworthy behavior" does not justify AEO provision where it was done "without direct or clear requirement from the court that information be used only for purposes of this action").

Contrary to City of Hope's allegations, Dr. Mardiros and his counsel have consistently and diligently acted in good faith with respect to any potentially confidential

information.  Before filing the complaint, Plaintiff's counsel even provided a copy to City of Hope's (former) counsel to confirm City of Hope does not believe anything is confidential.  (Ruttenberg Decl. ¶ 13).  Similarly, before producing Dr. Mardiros' documents that—while properly in Plaintiff's possession—may contain confidential information of City of Hope, Plaintiff's counsel affirmatively reached out to City of Hope.  (Def. Ex. D)  Unfortunately, City of Hope's new counsel decided to use that gesture as an opportunity to accuse Dr. Mardiros of wrongdoing (and even to threaten "state court proceedings").  Apparently, no good deed goes unpunished.

### F.   City of Hope's Proposed Protective Order Includes Unnecessary and Unwarranted Provisions.

Even if a more restrictive Protective Order were necessary in this case, there are still significant problems with the version proposed by City of Hope.

*First*, the possible need for more heightened protection of confidential information does not automatically require an AEO provision that excludes Dr. Mardiros.  Indeed, other courts considering an AEO designation have instead issued protective orders that safeguard "highly confidential information," while still allowing the receiving party to fully participate in the litigation.

For example, in *Dutch Valley Growers Inc. v. Rietveld*, No. 16-2085, 2017 WL 6945332, at *8 (C.D. Ill. Mar. 7, 2017), the defendants sought an AEO restriction for a narrowly tailored category of information, based on a concrete showing that the documents "would give Plaintiffs an incalculable competitive advantage."  Even so, the court rejected the AEO provision and, instead ordered a less restrictive one, wherein "Highly Confidential Information may be disclosed . . . only at the offices of that party's counsel."  *Id.*  Similarly, in *Defazio v. Hollister, Inc.*, No. CIV S-04-1358DFL GGH, 2007 WL 2580633, at *1 (E.D. Cal. Sept. 5, 2007), the court granted an AEO provision, but with the caveat that "plaintiffs may be permitted to view the documents with their attorneys present."  *Id.* ("this is not a case where the clients have no real, meaningful input to make into tactical decisions, or where their input would not be helpful in

determining the bona fides of the information submitted by defendants."). Yet other courts have endorsed a two-tiered protective order that restricts disclosure to a small number of personnel. *Motorola*, 2010 WL 2179170, at *4 ("highly confidential" information is available to "one designated non-lawyer representative of each corporate party"). As a compromise, Dr. Mardiros proposed a provision that would allow him to review materials designated as "Highly Confidential" with counsel—but City of Hope refused. (Ruttenberg Decl. ¶ 12).

*Second*, City of Hope's proposed protective order ignores several meaningful edits that Dr. Mardiros tried to include. For example, Dr. Mardiros proposed language that "Designations of "HIGHLY CONFIDENTIAL" material shall be kept to the minimum absolutely necessary to protect very sensitive information. The categories are as follows: [_____]." But City of Hope refused to accept such edits, without explanation. (*Id.* ¶ 12). As explained, it is well established that AEO designations are an "extreme measure" that should be used very selectively, if not sparingly. *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1085 (N.D. Ill. 2015) (removing AEO designations for lack of good cause and lack of specific evidence of competitive harm).

*Third*, City of Hope includes unwarranted and disruptive provisions pertaining to the disclosure of AEO material, particularly with respect to experts (other than Dr. Mardiros). Specifically, City of Hope seeks an order that essentially requires advanced disclosure of an expert who will see AEO materials. Not only has City of Hope failed to address this added language in its brief, but it wholly fails to meet its burden to show good cause for such language. *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 252 (D. Kan. 2010) ("exceptional circumstances" necessary for protective order provision requiring advance identification of party's experts or consultants prior to disclosure of materials or information designated as AEO). City of Hope fails to show any "exceptional circumstances" warranting such a restrictive disclosure protocol.

## IV.   __CONCLUSION__

Plaintiff Dr. Mardiros asks that the Court maintain the currently stipulated Protective Order submitted by the parties as Dkt. No. 27-1 and entered by the Court (Dkt. No. 28).  City of Hope has not shown good cause sufficient to modify the Protective Order.  Nor has City of Hope shown good cause to mark as "AEO" the exemplary items that it cites.  City of Hope (and Mustang) are using the instant motion in order to delay this litigation, and an AEO provision would only create further delay.  Worst of all, an AEO provision would unfairly prejudice Dr. Mardiros.  City of Hope's motion should be denied.


Dated:  September 23, 2019          Respectfully submitted,

                                    RUTTENBERG IP LAW
                              By:

                                    _/s/ Guy Ruttenberg_____
                                    GUY RUTTENBERG
                                    BASSIL MADANAT

                                    Attorneys for Plaintiff
                                    ARMEN MARDIROS

Dated:  September 23, 2019          DURIE TANGRI LLP


                              By:   _/s/ David McGowan_____
                                    DAVID McGOWAN

                                    Attorney for Defendant
                                    CITY OF HOPE


### __FILER'S ATTESTATION__

Pursuant to Civil L.R. 5-4.3.4, regarding signatures, I, David McGowan, attest that concurrence in the filing of this document has been obtained.

Dated:  September 23, 2019          _/s/ David McGowan_____
                                    DAVID McGOWAN

JOINT SUBMISSION PURSUANT TO LOCAL RULE 37-2 RE: DEF.'S PROPOSED PROTECTIVE ORDER / CASE NO. 2:19-CV-02196-R(MAAX)

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2019 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ David McGowan*
DAVID McGOWAN

JOINT SUBMISSION PURSUANT TO LOCAL RULE 37-2 RE: DEF.'S PROPOSED
PROTECTIVE ORDER / CASE NO. 2:19-CV-02196-R(MAAX)