**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARMEN MARDIROS, *an individual,*<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HOPE*, a California nonprofit corporation,*<br><br>Defendant. | Case No. 2:19-cv-02196-R(MAAx)<br><br>**ORDER DENYING DEFENDANT'S PROPOSED PROTECTIVE ORDER** |

### I.   INTRODUCTION

On September 23, 2019, Plaintiff/Counter-Defendant Armen Mardiros and Defendant/Counterclaimant City of Hope filed a Joint Stipulation Pursuant to Local Rule 37-2 Regarding Defendant's Proposed Protective Order. (Joint Stipulation, ECF No. 34-1.)  In support, Plaintiff filed the Declaration of Armen Mardiros (Mardiros Decl., ECF No. 35) and the Declaration of Guy Ruttenberg (Ruttenberg Decl., ECF No. 36), and Defendant filed the Declaration of David McGowan (McGowan Decl., ECF No. 34-2).

At issue is Defendant's request to modify the protective order issued on August 26, 2019, which contains only a "Confidential" designation and allows

Plaintiff to review confidential information. (Existing Protective Order, ECF No. 28). In place, Defendant seeks a protective order that would include a greater level of protection through a "Highly Confidential – Attorneys' Eyes Only" ("AEO") designation and would exclude Plaintiff from reviewing highly confidential information. (Proposed Protective Order, ECF No. 34-16).

Having considered the arguments of the parties and the related record, and for the reasons set forth below, the Court **DENIES** Defendant's request to modify the Existing Protective Order.

## II.   BACKGROUND

Plaintiff was working as a doctoral candidate researcher at Defendant between 2009 and 2014, the period during which he claims to have co-invented and genetically engineered brain and blood cancer therapies. (Joint Stipulation 6.) As part of Defendant's Intellectual Property policy, inventors receive one-third of any funds or stock received by Defendant in connection with the transfer of intellectual property. (*Id.*) Defendant filed three patent applications which Plaintiff claims relates to his work, and entered into a royalty-bearing license agreement covering the three patents/applications with Mustang Bio, Inc.—a company specifically created to exploit the licensed technology ("Mustang"). (*Id.*) Defendant did not name Plaintiff as an inventor on one of the applications, and named another researcher on the other two applications. (*Id.*) Plaintiff claims that, as a result, Defendant owes him money and stock received from the Mustang license. (*Id.* at 6–7.) After more than three years of unsuccessful efforts to resolve this matter directly with Defendant, Plaintiff filed the instant lawsuit. (*Id.* at 7.)

During the course of litigation, Defendant proposed a protective order with a default AEO designation. (*Id.* at 8.) Unable to agree to the terms contained therein, Plaintiff proposed his own version of a protective order without an AEO designation. (*Id.*) Because of a looming deadline for Defendant's responses to

1  Plaintiff's discovery, the parties agreed to a protective order without an AEO
2  designation without prejudice to the ability of any party to seek an AEO
3  designation upon a proper showing on an individualized basis. (*Id.*) In the interim,
4  the parties further agreed that Defendant could designate individual discovery items
5  as AEO on a temporary basis pending judicial resolution of any disagreement
6  regarding that designation. (*Id.* at 8–9.)
7       Defendant submitted a request for informal discovery conference to the
8  undersigned Magistrate Judge, seeking permission to designate its response to
9  Interrogatory No. 3 as AEO. (*Id.* at 9.) At that conference, the Court encouraged
10 the parties to meet and confer on an amendment to the Existing Protective Order to
11 include a provision allowing the designation of documents as AEO, which
12 provision was to include a definition of what information would be allowed to bear
13 the AEO designation, and how such documents would be handled through the
14 remainder of the litigation and upon its conclusion. (Order, ECF No. 31.) The
15 Court ordered the parties to file an amended protective order for the Court's
16 consideration if they were able to reach an agreement; otherwise, the parties were
17 ordered to separately propose an amended protective order for the Court's
18 consideration. (*Id.*)
19      Unable to reach an agreement, the parties filed this Joint Stipulation,
20 including a request from Defendant that the Court adopt the Proposed Protective
21 Order and a request from Plaintiff that the Court maintain the Existing Protective
22 Order. (Joint Stipulation 1, 24.)
23      The Proposed Protective Order provides two tiers of protection for
24 confidential material. It retains the original definition of "Confidential"
25 information as: "information (regardless of how it is generated, stored or
26 maintained) or tangible things that qualify for protection under Federal Rule of
27 Civil Procedure 26(c), and as specified above in the Good Cause Statement."
28 (Proposed Protective Order 2.) In relevant part, the Good Cause Statement

provides that "[i]t is the intent of the parties that information will not be designated as confidential for tactical reasons and that nothing be so designated without a good faith belief that it has been maintained in a confidential, non-public manner, and there is good cause why it should not be part of the public record of this case." (*Id.*) The Proposed Protective Order adds an AEO category of information which it defines as "extremely sensitive 'CONFIDENTIAL' Information or Items whose disclosure to another Party or Non-Party would create a substantial risk of serious injury that could not be avoided by less restrictive means." (*Id.*) It also seeks to exclude Plaintiff from information designated as AEO, and includes a more robust provision for its use and disclosure than that for the Confidential information. (*Id.* at 7–10.)

## III.  ANALYSIS

### A.  Legal Standards

The Court may, pursuant to Rule 26 of the Federal Rules of Civil Procedure ("Rule 26"), issue a protective order limiting disclosure of "a trade secret or other confidential research, development or commercial information." Fed. R. Civ. P. 26(c)(1)(G). The Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *Phillips v. GMC*, 307 F.3d 1206, 1211 (9th Cir. 2002). The Supreme Court long has recognized that "[t]he trial court is in the best position to weigh the fairly competing needs and interests of the parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders." *Seattle Times,* 467 U.S. at 36; *Phillips*, 307 F.3d at 1211–12. "Thus, a court may be as inventive as the necessities of a particular case require in order to achieve the benign purposes of the rule." *Phillips*, 307 F.3d at 1212 (quoting Arthur R. Miller & Charles A. Wright, *Federal Practice and Procedure* § 2036, at 489 (2d ed. 1994)).

It is the burden of the party seeking a protective order pursuant to Rule 26(c)(1)(G) to show that the information is, in fact, a trade secret or other confidential information, and that good cause exists for protecting the information. *See* Fed. R. Civ. P. 26(c)(1). "'Good cause' is established where it is specifically demonstrated that disclosure will cause a 'specific prejudice or harm.'" *Rivera v. NIBCO, Inc.*, 384 F3d 822, 827 (9th Cir. 2004) (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211–11 (9th Cir. 2002)). When trade secrets are at issue, the Court is required to balance the risk of disclosure to competitors against the risk that a protective order will impair prosecution of the action. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992), *cert. denied*, 506 U.S. 869 (1992). When private financial information is at issue, the Court is required to balance the party's interest in maintaining the confidentiality of its financial information against the interests of ascertaining the truth, addressing potentially severe wrongdoing by defendants, and ensuring the enforcement of rights. *See Charles O. Bradley Trust v. Zenith Capital LLC,* No. C-04-2239 JSW (EMC), 2005 U.S. Dist. LEXIS 35562, at * 6–7 (N.D. Cal. May 3, 2005).

### B. Discussion
#### 1. The Scope of Defendant's Proposed Designation Is Overbroad.

At the September 10, 2019 informal discovery conference ("IDC"), the Court instructed the parties to meet and confer to resolve their dispute regarding (a) an amendment to the Existing Protective Order to include an AEO designation, (b) a definition of what information would be allowed to bear the AEO designation, and (c) how such documents would be handled through the remainder of the litigation and upon its conclusion. (IDC Order 2, ECF No. 31.)

///

1    Plaintiff notes correctly that Defendant seems to seek an "open-ended AEO
2 provision" as it "has not identified any specific document or category of documents
3 that merits AEO treatment." (Joint Stipulation 5, 14.) Indeed, Defendant's
4 Proposed Protective Order defines the AEO category to cover: "Information or
5 Items whose disclosure to another Party or Non-Party would create a substantial
6 risk of serious injury that could not be avoided by less restrictive means."
7 (Proposed Protective Order 2.)
8    The Court finds the AEO definition to be overbroad. As Plaintiff aptly notes,
9 the law is clear that "the category of protected AEO documents 'must be narrowly
10 tailored and cannot be overbroad,' . . . must be limited to 'specific categories of
11 material that are meaningfully described,' . . . and cannot encompass documents
12 that are 'not specifically identified in the order.'" (Joint Stipulation 11) (citing *Big
13 Baboon, Inc. v. Dell Inc.,* No. CV 09-01198 SVW (SSx), 2009 U.S. Dist. LEXIS
14 103718, at *1, *9–10 (C.D. Cal. Nov. 6, 2009)). Here, Defendant's proposed AEO
15 category would allow a party to designate as AEO an incalculable amount of
16 information, merely by articulating purported concerns of risk but without first
17 establishing the good cause required by Rule 26(c).
18    That said, the Court will not throw out the baby with the bathwater. The
19 Court understands that, at the very least, Defendant seeks to protect under the AEO
20 cloak (a) competitively sensitive information relating to its licenses to Mustang,
21 (b) personal financial information of its current and former employees, and (c) the
22 substance of private negotiations between it and Mustang (the "Three Categories of
23 Information"). (Joint Stipulation 1–2.) The Court thus limits its analysis and Order
24 to the Three Categories of Information. Should Defendant later identify additional
25 categories of sensitive information it wishes to protect as AEO, it may seek such
26 protection then.
27 ///
28 ///

### 2. The Three Categories of Information Do Not Appear To Be Protectable.

As a threshold matter, the Court is not convinced that the Three Categories of Information are, in fact, protectable under either the Existing Protective Order or Defendant's Proposed Protective Order.

The Good Cause Statement in the Existing Protective Order contemplates the application of a "Confidential" designation where two prongs are satisfied: (1) the information constitutes trade secrets, other valuable research, development, commercial, financial, technical and/or proprietary information (including confidential business or financial information, confidential business practices, information implicating the privacy rights of third parties, information generally unavailable to the public, and information that is privileged or otherwise protected from disclosure by state or federal statutes, court rules, case decisions, or common law), and sensitive medical records; and (2) the designation is not made for tactical reasons and nothing may be so designated without a good faith belief that it has been maintained in a confidential, non-public manner. (Existing Protective Order 1–2.)

With the exception of deleting, without explanation, "sensitive medical records" from the list of information protectable under the Existing Protective Order, the Proposed Protective Order contains the same Good Cause Statement, *verbatim*. (Proposed Protective Order 1–2.) In addition, the Proposed Protective Order distinguishes between "Confidential" information as that which "qualifies for protection under Federal Rule of Civil Procedure 26(c), and as specified . . . in the Good Cause Statement," on the one hand, and AEO information as that which is "extremely sensitive 'CONFIDENTIAL' Information or Items whose disclosure to another Party or Non-Party would create a substantial risk of serious injury that could not be avoided by less restrictive means" on the other. (*Id.* at 2.)

///

Thus, to obtain protection under either protective order, the information must have been "maintained in a confidential, non-public manner" to begin with. Defendant provides no evidence that this definitional prong is satisfied as to the Three Categories of Information.

With respect to the licensing agreements, Defendant contends only that the "competitively sensitive information relating to [its] licenses to Mustang" has been redacted from Mustang's SEC filings. (Joint Stipulation 1–2.) But that is an answer to the wrong question. That Mustang may have redacted this information and/or taken steps to protect it is relevant to a motion that Mustang could bring to protect its information from disclosure in this litigation. But Mustang has not so moved.[1]

The relevant inquiry here is what Defendant has done to protect its licensing and negotiation information such that the Court may find it to warrant AEO

---

[1] The Existing Protective Order allows Mustang, as a non-party, to seek protection from the Court within 14 days after learning of a discovery request that would require disclosure of its confidential information, provided it has an agreement with the disclosing party precluding it from producing Mustang's confidential information. (Existing Protective Order 9.) There is no evidence regarding the date on which Mustang learned that Plaintiff's discovery requests purportedly seek Mustang's confidential information. However, Mustang's impromptu appearance at the parties' September 10, 2019 IDC to argue in favor of an AEO designation as to documents that related to Mustang (ECF No. 31 - of which the Court takes judicial notice pursuant to Federal Rule of Evidence Rule 201(b)), sets September 24, 2019 as the latest date by which Mustang would have been required to file a motion seeking its own protective order. That date has passed and no such motion has been filed. Moreover, there is no evidence that Mustang has an agreement with Defendant precluding Defendant from producing Mustang's confidential information. To the extent Defendant seeks to protect Mustang's trade secrets or other competitive information, it offers no argument regarding its standing to do so, and the Court declines to so consider. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for [a litigant], and a bare assertion does not preserve a claim, particularly when, as here, a host of other issues are presented for review.").

protection as Defendant's trade secret. Tellingly, the answer appears to be that neither Defendant nor Mustang has insisted on this level of protection in the past. To the contrary, both Defendant and Mustang, together with other defendants, previously detailed their negotiations regarding the 2015 Mustang license at issue here in a Joint Rule 26 Report filed in a separate matter. *See Tang v. Rosenwald*, Case No. 2:16-cv-01317-MWF-PLA, Joint Rule 26 Report 4–5, ECF No. 21 (C.D. Cal. Mar. 21, 2016).[2] In that same Joint Rule 26 Report, the defendants identified documents related to negotiations regarding the licensing of the technology at issue here as relevant to the litigation and subjects of potential discovery. *Id.* at 10, 13. Significantly, the parties declined a protective order: "The parties do not believe that it is necessary at this time for the Court to issue any other orders under Rule 26(c) or under Rule 16(b) and (c)." *Id.* at 14.

Defendant also is silent with respect to the steps it has taken to protect the personal financial information of its current and former employees. In contrast, Plaintiff attests that Defendant has shared this information with him in the past because the information is necessary to calculate and explain the royalties due to him and the other inventors. (Mardiros Decl. ¶ 37.)

For these reasons, the Court has serious misgivings about whether the Three Categories of Information are protectable in the first instance. Still, because the Court finds that the Protective Order is not warranted for other reasons, it declines to make a ruling on this question at this time.

///
///
///

---

[2] A court may take judicial notice of court filings and other matters of public record. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015) (collecting cases).

### 3. The Proposed Protective Order Provides No Greater Protection Against Risk Of Prejudice Or Harm To Defendant Relative To The Licensing And Negotiation Information.

Even assuming the licensing and negotiation information is protectable under either protective order, the Court finds that the Proposed Protective Order offers no greater protection against risk of prejudice or harm to Defendant than the Existing Protective Order.

In reviewing the risk of prejudice or harm to the party seeking to protect trade secrets or sensitive competitive information, a court must examine factually all the risks and safeguards surrounding inadvertent disclosure. *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (citing *Brown Bag Software*, 960 F.2d at 1470). In so doing, the court should consider whether the receiving party is a competitor, is "involved in 'competitive decisionmaking,'" or interacts with a competitor. *Lindsey v. Elsevier Inc.*, No.: 16-cv-00959-GPC (DHB), 2016 U.S. Dist. LEXIS 111786, at *9 (S.D. Cal. Aug. 19, 2016). A party is "involved in 'competitive decisionmaking'" if he advises the competitor on decisions that are "made in light of similar or corresponding information about a competitor." *Brown Bag Software*, 960 F.3d at 1470 (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984)). But even a "competitive decisionmaker" cannot be excluded from the confidential information unless it is shown he would be "unable to compartmentalize [the information] and selectively suppress confidential competitive information once learned"—that is "lock-up trade secrets in his mind." *See Isis Pharms. Inc. v. Santaris Pharma A/S Corp.*, No. 11cv2214-GPC (KSC), 2013 U.S. Dist. LEXIS 94263, at *17 (S.D. Cal. July 5, 2013).

Defendant adduces no evidence of risk that Plaintiff would or could inadvertently disclose the licensing or negotiation information to Defendant's

competitors. It does not aver that Plaintiff himself is a competitor, or that Plaintiff works for or interacts with one of its competitors. To the contrary, Defendant's only argument is that "Plaintiff works for a Mustang competitor." (Joint Stipulation 1.) But this is not probative. The inquiry is whether Plaintiff or his employer are competitors of Defendant, not whether Plaintiff or his employer compete with a third-party that merely contracts with Defendant. Indeed, that Plaintiff may be employed by a competitor of Mustang becomes relevant only if Mustang seeks an order limiting the disclosure and/or use of its trade secret or confidential business information, which, as mentioned above, is not a request before the Court.[3]

Even if Plaintiff were to disclose Defendant's licensing and negotiation information to his employer Allogene Therapeutics ("Allogene"), it reasonably cannot be inferred, let alone established as Defendant must, that Allogene would stand to gain a competitive advantage over Defendant because there is no evidence that Defendant and Allogene are competitors. Indeed, Defendant does not so contend, and Plaintiff declares that he has no reason to believe that Allogene is a direct competitor of Defendant. (Mardiros Decl. ¶ 46.)

Moreover, Plaintiff's role at Allogene does not render him a competitive decisionmaker. Setting aside for the moment that Allogene is not a competitor, Plaintiff declares under oath that he does not participate in board meetings, and is neither involved in, nor provides input on, marketing or patent strategy (Mardiros Decl. ¶¶ 46, 49), the areas of decisionmaking that arguably could benefit from the licensing and negotiation information. The only information that arguably could create a competitive risk vis-à-vis Plaintiff's "largely technical and scientific" work at Allogene (Mardiros Decl. ¶ 49) is technical information that is neither encompassed in the Three Categories of Information nor has been designated as

---

[3] *See supra* note 1.

1  AEO to date (Joint Stipulation 2). In any event, even if Plaintiff were involved in
2  competitive decisionmaking, Defendant offers no evidence to challenge Plaintiff's
3  assertion that he is able to compartmentalize information, and has done so in the
4  past given that he often has been tasked with projects for multiple institutions. (*See*
5  Mardiros Decl. ¶ 53.)

6  Finally, Defendant adduces no credible evidence that the Existing Protective
7  Order offers insufficient or inadequate safeguards to protect against Plaintiff's
8  inadvertent disclosure of the licensing or negotiation information. Pointing to two
9  instances of Plaintiff's purported misconduct, Defendant claims that Plaintiff
10 cannot be trusted. (Joint Stipulation 2–3.) First, Defendant notes that Plaintiff has
11 disregarded his contractual obligations with Defendant related to documents. (*Id*. at
12 2.) Specifically, Defendant claims that Plaintiff took some of Defendant's
13 documents upon his separation from employment in 2014, had them with him when
14 he worked for Kite Pharma and Allogene (two companies that compete with
15 Mustang), and to date has refused to return the documents to Defendant. (*Id.* at 2–
16 3.) Second, Defendant claims that it entered into an email agreement with Plaintiff
17 regarding the use of the AEO designation and that Plaintiff has threatened to
18 disregard the agreement. (*Id*. at 3.)

19 The Court is unpersuaded by Defendant's argument that Plaintiff cannot be
20 trusted—either in the absolute or, as relevant here, to comply with the Existing
21 Protective Order. Defendant adduces no evidence that Plaintiff has breached any of
22 his confidentiality obligations; it points only to the fact that Plaintiff took some of
23 its documents when he left Defendant's employ. (*Id*. at 2–3.) While Defendant
24 insinuates that this is a violation of Plaintiff's post-employment confidentiality
25 obligations, the Court notes that, even if true, this occurred in 2014 (*id*.), five years
26 before the filing of this lawsuit and the imposition of the Existing Protective Order
27 which contains clear orders from the Court limiting the use of the information. As
28 such, this fact does not inform the inquiry whether the safeguards afforded by the

Existing Protective Order are inadequate or insufficient to protect against the risk of improper disclosure. In addition, Defendant's purely speculative allegations that Plaintiff will not comply with the Existing Protective Order, or the email AEO agreement, are not a sufficient basis upon which to impose a greater level of protection. *See, e.g., Delquin Plastics USA, Inc. v. Larach*, No. CV 16-5518-TJH (AGRx), 2017 U.S. Dist. LEXIS 216042, at *4 (C.D. Cal. Sept. 26, 2017).

Plaintiff, on the other hand, denies violating any confidentiality obligation (Joint Stipulation 21–22); attests that he has undertaken affirmative efforts to protect potentially confidential information in connection with this lawsuit (*id.* at 22); affirms that he understands, and will abide by, his obligations under the Existing Protective Order (*id.* at 21); and declares that he has no use for the information at issue beyond the litigation of this case (*id.* at 15). Moreover, Plaintiff notes that Defendant has continued collaborating with him during this litigation and despite his employment at Allogene. (*Id.* at 15, 21.) Specifically, Plaintiff recounts that Defendant has continued to invite him to participate in its scientific meetings; has asked him to assist with finalizing patent applications, publications, and similar work; has given him access to its documents for consultative purposes; has requested him to share his reference materials; has acknowledged that he retained a library of his research during his employ with Defendant; and, significantly, has disseminated "confidential" information pertaining to the financials of the Mustang License to him. (Mardiros Decl. ¶¶ 51, 55–61.) In addition, as Plaintiff points out, any purported concerns of Defendant about competitive risk are further called into question by its direct cooperation with Allogene. Defendant allows the person who "heads the relevant . . . Lab and participates in patenting and licensing matters at City of Hope" to "sit on a scientific advisory board at Allogene" and "attend[] meetings at Allogene's headquarters on multiple occasions." (Joint Stipulation 15.) The Court concludes that Defendant's assertions that Plaintiff cannot be trusted are dubious.

Still, even if Plaintiff could not be trusted to comply with the Existing Protective Order, Defendant fails to explain how the Proposed Protective Order enchantingly becomes the proverbial silver bullet—the infallible means by which the licensing and negotiation information will be protected. To begin with, the Proposed Protective Order permits disclosure of AEO material to experts, albeit under more strict guidelines than for Confidential materials (Proposed Protective Order ¶ 7.4), and Plaintiff has been designated as an expert in this case (Joint Stipulation 19). Moreover, the consequences that flow from a violation of the Proposed Protective Order are no more severe than those from a violation of the Existing Protective Order. The Existing Protective Order states that "[a]ny violation of this Order may be punished by any and all appropriate measures including, without limitation, contempt proceedings and/or monetary sanctions." (Existing Protective Order ¶14.) The Proposed Protective Order contains the same language, *verbatim*, offering no harsher penalties for violation of the AEO obligations. (Proposed Protective Order ¶ 14.)

Accordingly, the Court finds that the safeguards of the Proposed Protective Order offer no greater protection to the Defendant than those in the Existing Protective Order.

### 4. The Proposed Protective Order Provides No Greater Privacy Protection For The Third-Party Personal Financial Information.

Even assuming the personal financial information is protectable under either protective order, the Court finds that the Proposed Protective Order offers no greater privacy protections for the third-party personal financial information than the Existing Protective Order.

There is no federal common law privilege akin to the right of privacy, but federal courts ordinarily recognize a constitutionally-based right of privacy that can

be raised in response to discovery requests. *See Keith H. v. Long Beach Unified Sch. Dist.*, 228 F.R.D. 652, 657 (C.D. Cal. 2005); *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 191 (C.D. Cal 2006). However, this right is not absolute and may be overcome by a showing of compelling need. *See Ferm v. United States Trustee (In re Crawford)*, 194 F.3d 954, 958–59 (9th Cir. 1999). "Courts that have considered whether a disclosure of financial information might violate a constitutional right to privacy have employed a balancing test to determine whether there has been a violation." *Charles O. Bradley Trust,* 2005 U.S. Dist. LEXIS 35562, at *6. Weighing in favor of disclosure are the interests in ascertaining the truth, addressing potentially severe wrongdoing by defendants, and ensuring the enforcement of rights. *Id*. at *6–7. Still, a party's interest in maintaining the confidentiality of its financial information can be appropriately protected by a protective order. *See, e.g., Buckholtz v. Rogers Benefit Group*, *Inc.*, No. 12-cv-2167-BEN (DHB), 2013 U.S. Dist. LEXIS 55894, at *10 (S.D. Cal. Apr. 18, 2013); *Baykeeper v. Kramer Metals, Inc.*, No. CV 07-3849 DDP (FMOx), 2009 U.S. Dist. LEXIS 136154, at *19 (C.D. Cal. Feb. 27, 2009).

The question here is whether the "Confidential" designation provided by the Existing Protective Order is inadequate to maintain the confidentiality of this personal financial information such that an "AEO" designation is necessary. The Court agrees with Plaintiff that, other than the bald assertion that personal financial information should be protected from disclosure (Joint Stipulation 2), Defendant does not answer this question (*id*. at 16). On the other hand, Plaintiff asserts that Defendant has shared this information with him in the past (*id*.), bringing into question the authenticity of Defendant's stated concerns about risk of prejudice or harm. Moreover, Plaintiff declares that the three individuals whose financial information is at issue—Drs. Forman, Mahesh Jonnalaggadda, and Brown—"have never raised such a concern with [Plaintiff]." (Mardiros Decl. ¶ 54.)

///

As with the licensing and negotiations information, the Court is unconvinced that the Proposed Protective Order will afford better protections for the personal financial information at issue here than the Existing Protective Order.

### 5. There Is Significant Risk That An AEO Designation Will Impair Plaintiff's Ability To Prosecute His Claims Or Defend Against Defendant's Counterclaims.

Even if the Court were to find that the AEO designation in the Proposed Protective Order better protects against risk of prejudice or harm either to the Defendant (with respect to its licensing and negotiations information) or to third-parties (with respect to their personal financial information), Plaintiff still would be permitted access to the information upon a showing that such a designation would "actually prejudice" the presentation of his case. *See Lindsey*, 2016 U.S. Dist. LEXIS 111786, at *12.

"A showing that the protective order increases the difficulty in managing litigation, without more, does not constitute actual prejudice." *Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, No. 13cv2371-GPC (JLB), 2014 U.S. Dist. LEXIS 115896, at *16 (S.D. Cal. Aug. 19, 2014). But where the technical nature of the case requires specialized knowledge to supervise the litigation, courts have found "good cause . . . to outweigh the risk of inadvertent disclosure." *Intel Corp. v. VIA Techs., Inc.,* 198 F.R.D. 525, 528 (N.D. Cal. 2000). Courts also have allowed access to confidential information where financial hardship limits the ability of a party to delegate this supervision function to experts. *See Mad Catz*, 2014 U.S. Dist. LEXIS 115896, at *15–17. Moreover, courts have found serious due process concerns where the information is so protected as to severely hamper the party's participation in the litigation. *See McDonald Apiary, LLC v. Starrh Bees, Inc.*, No. 8:14-CV-351, 2016 U.S. Dist. LEXIS 27925, at *3 (D. Ne. March 4, 2016). Thus, AEO designations should be rare and reserved for those

circumstances where "there is no other effective alternative." *Gillespie v. Charter Commc'ns,* 133 F. Supp. 3d 1195, 1202 (E.D. Mo. 2015) (citations omitted).

Plaintiff argues that he would be unfairly and substantially prejudiced if excluded from the Three Categories of Information. (Joint Stipulation 18.) He contends that he is "uniquely qualified to analyze [this] discovery and provide input, both because of his scientific background and his years-long knowledge of the facts and industry" and has been "designated as an expert in this case." (*Id.* at 18–19.) In addition, Plaintiff asserts that he "has been personally and actively involved in this dispute since its inception several years ago—even before retaining counsel and filing suit," including participating in mediation, settlement meetings, and the parties' Rule 26 conference. (*Id.*)

Defendant disputes that Plaintiff will be prejudiced by the creation of an AEO designation. (*Id.* at 2.) It argues that Plaintiff's self-proffer as a technical expert is of no consequence here because Defendant does not seek to protect any technical information under the AEO designation. (*Id.*) Defendant further argues that Plaintiff's expertise does not extend to the Three Categories of Information because he claims no economic or licensing expertise. (*Id.*) Finally, Defendant contends that Plaintiff has identified no need to see every document in this case other than "his own curiosity to learn . . . how much money his former thesis adviser makes." (*Id.*)

The Court is persuaded that the Proposed Protective Order effectively excludes Plaintiff from reviewing documents that are critical to the prosecution of his case and the defense of the counterclaims. The evidence is clear that Plaintiff handled this dispute years before it became a lawsuit and has "unique, first-hand knowledge" of information uncovered during that time. (Mardiros Decl. ¶ 31.) In addition, taking on the expert role, a role Defendant can challenge separately, potentially will save Plaintiff from expending his "limited funds" in hiring additional experts. (*Id.* ¶ 43.)

17

The Court finds that there exists a risk that an AEO designation significantly will impair Plaintiff's ability to prosecute his claims or defend against Defendant's counterclaims.

### C.  Conclusion

For the foregoing reasons, the Court concludes that the Existing Protective Order adequately protects the Three Categories of Information.[4]  Accordingly, the Court **DENIES** Defendant's request to modify the Existing Protective Order to include provisions allowing parties and non-parties to designate as "Highly Confidential – Attorneys' Eyes Only" such information and documents.  This denial is without prejudice to any party seeking modification of the Existing Protective Order to include an AEO designation for any category of information not heretofore sought or obtained through the parties' discovery in this litigation.

IT IS SO ORDERED.

Dated:  October 2, 2019              _____
                                     MARIA A. AUDERO
                                     UNITED STATES MAGISTRATE JUDGE

---

[4] The Court does not consider Plaintiff's argument that Defendant's motion is untimely (Joint Stipulation 12–13), or that an AEO designation can be fashioned without excluding Plaintiff from the documents (*id.* at 22–23).  The Court's order denying Defendant's motion renders these issues moot.

18